Good morning. May it please the Court, Victor D. Nieblas for Petitioner Alfonso Aquino-Campero. Your Honor, as the Court knows, this case involves an inabsential order. The government's reliance, or basically the government's argument, is that they rely on the declaration that we filed with the Notice of Appeal to the Board of Immigration Appeals, and we also submitted it on appeal with the Board of Immigration Appeals. One of the issues that I think we have to discuss is whether or not the Board of Immigration Appeals, BIA, has the authority to review that declaration. We do have to admit, Your Honor, that the declaration when it was written, we did not have privy to the letter written by the clinic. That letter was submitted, from my understanding, directly to the Attorney's Government Counsel, and Government Counsel introduced it to the record in their response, in their opposition to the motion to reopen. So — But it's my understanding that, although I find the letter quite disturbing and probably dispositive, it isn't clear to me that it was relied upon by the BIA in denying the motion to reopen. Well, Your Honor, you're correct. We don't know what the Board relied upon, because this was a summary affirmance. It said the BIA. It was introduced at the IJ level. The IJ. I meant the IJ. The IJ. Well, Congress said the BIA before, too. Okay. It was introduced at the IJ level, right? Yes. It was introduced by the government attorney. So when we appealed, we weren't privy to that letter. It was part of the file. It was part of the judge's file. But certainly my client's acting pro se did not have — But my question is what in the record suggests that anybody — that the IJ relied upon it? My reading of the record is that it did not rely on it, perhaps for that reason. Your Honor, I think you're correct. Certainly the immigration judge does not allude to the letter. The immigration judge, in fact, required that, at least in the decision, that my client should have called the court, that my client should have had other forms of evidence to establish exceptional circumstances. Excuse me. Which letter now are you — are we all talking about the same letter? Yes. Well, I'm referring to the letter from the clinic that indicates they burned — they had a fire on August the 10th. Right. We're on the same page then. Yes. So from my point of view, certainly the IJ did not allude to it, did not refer to it. And certainly what he did at least consider was the picture submitted by my pro se clients from a clinic that was boarded up and closed. That was the only evidence that they had before them. It was the only evidence that they could provide. They did request from a mobile van in front of the clinic days later that they should — if they could give them some type of proof. At some point they did write a letter and forward it directly to the government attorney. But they also said something about they gave him a small piece of paper, and that piece of paper has never been introduced into the record either. Yes, Your Honor. My client indicates that he was given a — just a slip of paper with a written note and that he submitted that with his motion. But he did submit it. It's not part of the record. It does not appear as part of the record. But that was at least his statements. So here's where I think we are, and I'd like to see if that's right. The letter, although it might be dispositive if, for example, we were to remand for an evidentiary hearing or the information in it, at this point is sort of out of the picture because the I.J. made his finding on the motion to reopen it without relying or even mentioning it. But what he did do was conclude that the respondents failed to carry their burden of showing that they were — there was sufficient medical emergency to justify the failure to appear. So it seems to me that's what you have to address. Yes, Your Honor. And I think we did in our appeal to the board. I think, first of all, we — I do have to emphasize that my clients were acting pro se. The question is, what was before the I.J.? And you put no evidence before the I.J., actually. I understand, Your Honor. And again — It wasn't even verified. They were acting pro se. Okay. So the only evidence that they had before — They weren't acting pro se, but the question is, that's what they did. And what was in front of the I.J. is what we have here. Exactly, Your Honor. And what we have here are pictures from the clinic, the clinic and statements indicating the clinic had burned down, statements that my client had suffered from the precondition of a stroke and was ordered to remain home. And obviously the minor children did not — they stayed with the father, take care of the father because there was a history of strokes. I thought one was an adult. The older daughter, she was the one responsible for the father. It wasn't the minor children. There was an adult daughter and a son who was practically an adult. He was very close to 18. So we're not talking about little kids scampering around. I understand, Your Honor, but they were still — I think what the question is, that we're requiring these pro se clients to know what to do in this situation, to know what the regulation says, to know that they have to establish exceptional circumstances, to know that the judge would require a phone call to the court, letters, an affidavit from a doctor, simply evidence that wasn't available. Now, certainly they could have called if they would have known. If someone would have told them, say, the judge or in the letter of denial, you should have called the court or you should call. If you can't make an appointment, do call. I mean, it isn't a question of having a requirement. If you have an appointment and you can't make it, you call, especially when it's not just one person who has it. There were two other people who could have made the phone call. Your Honor, I would agree for a situation where people are sophisticated in legal methods. I'm not talking about legal. I'm talking about any appointment. Well, yes, Your Honor. In our country, that would be correct. However, again, I don't want to ---- You're telling me in his country they don't have just normal kinds of things like that? I don't know if they ---- I really don't know if they have a requirement. You're saying in Mexico. Are you telling us that the record tells us that in Mexico, for example, people, when they break appointments, they don't bother calling ahead? Your Honor, I can't generalize. I would not have a direct answer for that. Well, but you just said in our country we do that. But so what is the but? Well, Your Honor, the but is that these people are, again, did not speak English. The daughter, the oldest daughter, was the only one with some type of English fluency at the time. And she did not know any legal, the legal steps to take in a situation of this nature. I guess I have two questions. One is I gather the record does show that the phone number of the place to call was not on the information they got. Is that right? Yes, Your Honor. I mean, in any of the notices that they received, there is no phone number. And in fact, a call, quote, unquote, would not fall under the exceptional circumstances standard. They require a serious illness or death in the immediate family or arrest by the local authorities. So a phone call would not excuse it. The second question is that you did, I don't know if you or another attorney was involved in the motion to reopen, but at that point, before the BIA, but at that point, some information was, a more specific declaration was provided. Still no medical information, though. Yes, Your Honor. There was no medical information, again, because. Well, but they said they got a little piece of paper, and that's not, wasn't submitted either. Yeah. Well, it was apparently submitted, but never part of the record. I don't know what this little paper would look like. Certainly, it was a statement. What makes you say it was submitted, but not part of the record? What does that mean, submitted, but not part of the record? Your Honor, that means that in the declaration that the Respondent filed in his appeal with the BIA, where he wanted to expand on some of these concepts, he indicated that there was a paper that he received from the mobile van. He indicated he submitted it. No. It's just a statement in the declaration. We have no reason to believe it was submitted and lost, as opposed to never submitted. Yes, Your Honor. And additionally, again, the statements from the clinic is that they burned down and didn't have any records. So there was no way of independently verifying that this individual was treated on a certain day by the clinic, because all their records burned down. So it's, it's, it's. Well, here's the theoretical question, which is, suppose we thought there was something in this declaration submitted to the BIA that would have meant that it was an abuse of discretion to deny the motion to reopen. Is that declaration submitted at the BIA level something that we can take cognizance of? My understanding of the current regulations is that it's the IJA that does the fact-finding. So what is the role of this declaration? Well, Your Honor, I think Section 101, excuse me, 1003.1D.3.4, there's three parts to that regulation. And the last part says if further fact-finding is required, the board may remand the proceedings. So in a sense, there is some obligation. Excuse me? Is there anything about a motion being made? Is there? I didn't hear you, Your Honor. I'm sorry. Does it say anything else? Does it just say they may remand, period? Yes, they may remand the proceedings to the lower court. The second part does say that if a party asserting that the board cannot properly resolve an appeal without further fact-finding must file a motion to remand. However, that last sentence obligates the board to act in situations where they feel there are some facts that need to be developed or discussed, and they themselves can act and remand a case. It's also important to note that when a brief or an appeal is filed with a board with new evidence, the board manual, procedural manual, indicates that that appeal will now be viewed as a motion to remand. So even though the appeal or the appeal is filed with new evidence. And the board manual says that. That's really what I'm asking. Yes. The board says that it may be considered as a motion to remand, even though there is no title, no, quote, unquote, black letter title motion to remand. So they certainly have made clear that you don't have to, quote, unquote, write motion to remand on an appeal when you submit new evidence. So in that sense, it would obligate the board to at least look further into the situation, remand to the judge when required so they can consider further facts in a case. Thank you very much. Thank you. Counsel. Good morning. My name is Joe Larson, attorney for the court. Whether you agree with the procedural observation that was just made, that is that. Counsel, I didn't get your name on it. I'm sorry. Kurt Larson for the attorney general, sir. Thank you. Whether the, what, if somebody submits evidence to the BIA under the new regime in which the BIA will not itself find facts, is that submission itself tantamount to a motion to remand? No, it is not. If you look at the appropriate regulation in context, not out of context, if you look I'd like to read it if I could. Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the board will not engage in fact-finding in the course of deciding appeals. A party asserting that the board cannot properly resolve an appeal without further fact-finding must, not should, not can, not could, must file a motion for remand. If further fact-finding is needed in a particular case, the board may remand the proceedings to the IJ. But essentially what we're being told, and it makes some practical sense to me, that the board has as a practical matter taken the position, I guess, in an internal document of some kind, that filing the document itself is to be treated as a motion to remand. And we have a rule, for example, that says that if you file an appeal but don't file an application for a COA, we will consider that you're filing an application for a COA. I don't think that's before the Court, the actual verbiage of that's before the Court, but I would also submit that the regs would supersede that statement. But they don't answer the question. They don't say what is a motion to remand. Correct. But I'd like to go through a couple of points. First of all, the Petitioner simply appealed the IJ's decision. They never filed a motion to remand. Number two, he was on notice since 2002 of the new procedure that he had to file a motion to remand. Number three, he failed to file a motion to remand. Number four, and here's an interesting point, when you do a motion to reopen or a motion to remand, one of the things you have to state in there is why the evidence could not have been produced earlier, why it couldn't have been discovered earlier. Nothing else. You've got to take it in custody. You can't throw something up on the wall and say, hey, you guys decide for me. Tell me what I need to do. There are procedures in place, specifically procedures in place, and again, I go back to the point saying that the Board, in the cases, if you want to do further fact-finding, you must file a motion to remand, period, end of statement. Other things that need to be before the Board or this Court, even if the evidence submitted was accepted, it still contradicts the stuff from the clinic that's out there. More importantly, was it actually new evidence? I'm sorry. I didn't understand what you said. The letter from the clinic? Well, what is your view as a physician in this case of the letter from the clinic? The IJ could have said, you know, there's a letter from the clinic. It says that you're lying, and I rely on that, and that's the end of it, and that would have been a fairly persuasive document, except possibly for procedural reasons, which may be why he didn't do that. He didn't do that. Well, what the IJ did say was respondents have failed to present sufficient credible evidence to establish the existence of any exceptional circumstance. The IJ doesn't have to use magic words. It doesn't have to say, I've looked at Exhibit 1, 2, 3, 4, 5. This letter was such that if he was going to rely on it, why would he go through all this material of that? He does not find the evidence to be adequate proof that he was actually receiving clear care from the specific clinic. He finds it unpersuasive, but he never mentions the letter. Now, it may well be that he regarded there as being a procedural problem with that letter, and that if he was going to rely on it, he'd have to have a hearing, and perhaps he would have. And maybe that's why he didn't do it, but he certainly didn't do it. It also could have been that he thought that that letter was only, the place might have burned down another time 10 days later. Oh, come on. It was completely dispositive if he believed it. I think that there's a lot of things. We can use conjecture to figure out what we believe the IJ might have been thinking with this and why he didn't specifically point it out. You know, we could come up with a thousand. I guess, well, let's switch the inquiry then. Is it appropriate for an IJ to rely on a letter from somebody which isn't in a declaration, isn't sworn to, and isn't presented in a hearing? Well, it's the INS opposed the motion to reopen. And they opposed the motion to reopen with this letter in there sitting. I agree. And I think that's appropriate. But is that appropriate? That's appropriate for them. Why?  If I knew that. Where's the evidence? If the petitioner could present evidence that the medical facility had burned down. Well, he didn't present any evidence, obviously. He didn't. He didn't. In the motion to reopen, he does. He states that the. He's made a bunch of statements. But I don't know how you folks look at evidence. But I thought evidence had to be under oath or declaration under penalty of perjury or an affidavit. We don't have. It's not very evidentiary. Yeah. They don't follow the. There's a lot of things that come in in an immigration proceeding that wouldn't come in in a court of law. Well, no, I understand that. But even our cases say that you have to give. We have to give credence to affidavits. And the BIA must give credence to affidavits. He didn't file any affidavit here, did he? And that's just it. I mean. And we're going to consider his. Did not. If we're saying that evidence is OK, if it just comes in, even if it's not sworn to. Well, his isn't sworn to. And neither is yours. So I don't quite see what the disjunct, what the disjunct is. And that might have been that the I.J. might have said, you know what? It wasn't in a sworn statement. I don't want to take it in as evidence. Again, it's adding on to the conjecture that we're trying to figure out why, you know, you asked that it should specifically be in there. The government would suggest that no magic words have to be in the I.J.'s decision. He doesn't have to go over each bit of evidence put in front of him or the information put in front of him as long as, and it goes back to the point, that as long as it wasn't an abuse of discretion that the I.J. and the board found that he failed to meet his standard, exceptional circumstances, this court has to uphold it. But, again, I go back to a couple other points. This court asked the government and the Petitioner's Council to look upon, can the board look at new facts? And the government's already stated they can't. One of the questions when I was reading over the administrative record was, is the affidavit really new facts? Is the affidavit presented to the board really new facts? I would question whether it is or not. It's more of like a compilation of what the Petitioner said earlier. The Petitioner's Council seems to think that the Petitioner doesn't have the ability, because he's prosaic, to put it in the words to motivate the I.J. and the board to really understand the case. It's somewhat more specific, at least. I know. But I'm throwing that out just as, I think there's about six different reasons why, A, to show that in order to get a remand, in order to present new evidence, you must file a motion to remand. And number two is that there's a lot of things in here that the court needs to take into account. And, again, I go back to the one that it doesn't state why the evidence wasn't produced at the early proceeding. And that's under your case in Rodriguez, 841 F. 2nd 865. Now, if you are going to do one of these, another thing you have to do, we've set up the procedure. You can file a motion to remand. You must. Not can. You must. But also, you've got to say why that evidence wasn't available. Well, the declaration sort of says that. Well, no, it doesn't say why the declaration wasn't available. You're right. And as far as just taking what was before the I.J. at the time the I.J. made the decision, that is clearly deficient in your view? Yes, sir. Because? The I.J. can, I mean, the board can ask that. Just from the lack of medical confirmation or? A couple of things. I mean, is there something wrong with the statement even of the petitioner? I think there's two points, Your Honor. If you look at Celis Castellano, Castellano, that is such an on-point case that describes what is exceptional circumstances. In that case, this court upheld the board's decision that an individual that presented evidence that he had an asthma attack and had to be away from his home or away from his job for six days didn't amount to exceptional circumstances, wasn't severe enough. So the I.J. said it's not severe enough, number one, because you don't have the corroboration. Moreover, he didn't really believe this in this case. So it's really a two-prong type of analysis for the I.J. Thank you very much. Thank you. Can you please report a couple of points? First, the motion to reopen that was filed by the applicants did not mention any dates as far as when they went, when they did not. So if this letter was or not considered, that letter would not have been dispositive as to whether or not the actual burning of the clinic happened before or after. You need me to be right now that I've just looked at it. But that's not true of the declaration that was later filed. Yes. The declaration that was later filed, again, was without the information in this letter. So we went from memory, and this is what the Respondent just remembered, that it was around that date. Now, second — Wait a minute. He said very specifically that on August 20th, 2002, I began to feel ill at my work. And then he goes on about the next morning, August 21st, he woke up and so on. So the declaration is inconsistent with the letter. The information, more general information submitted to the I.J. is not. And that may be the explanation of why the I.J. didn't deal with it. Well, yes. And, again, that was before the Board. Who knows if the Board considered the declaration or not. Now, whether or not we should file a motion to remand, yes, that's what the regulation states. But, again, I want to draw attention to this court, to the Board of Immigration Appeals Practicing Manual. And they say it in several chapters, Chapter 5, Section 5.8, Chapter 10, 10.3 Section, and Section 4, 4.8. And this is basically what they state. If new evidence is submitted in the course of an appeal, the submission may be deemed a motion to remand the matter to the Department of Homeland Security for consideration of that new evidence. So, inherently, new evidence will spark this thinking of a motion to remand. It may be deemed. It doesn't say shall be deemed. And I suppose that simply means that the Board's free to consider it that way if it wants to. Yes. And I would also contend, Your Honor, that the Board should address whether or not they considered or not considered the new evidence. And, of course, in the summary affirmance procedures, they don't say anything. So we don't know if they did or did not review this information. Believe my time. Okay. Thank you very much, counsel. Thank you. Thank you, Mr. Counsel, for your useful argument. The case of Aquino-Campero v. Gonzalez is submitted.
judges: Canby, Fernandez, Berzon